**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **PAUL CHAU,** | No. **1:24-cv-08533 (VSB) (SDA)** |
| **Plaintiff,** |  |
| -against- |  |
| **ISRAEL DISCOUNT BANK OF NEW YORK,** |  |
| **Defendant.** |  |

**PROTOCOL FOR THE DISCLOSURE, SEARCH AND PRODUCTION**
**OF ELECTRONIC SYSTEMS AND ELECTRONICALLY STORED INFORMATION**

Plaintiff Paul Chau ("Plaintiff") and Defendant Israel Discount Bank of New York ("Defendant") (collectively "Parties") hereby agree to the following protocol for production of electronically stored information ("ESI"). Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any ESI produced in accordance with this protocol.

I.    **GENERAL AGREEMENTS**:

1.    The Parties agree to meet and confer via telephone and in good faith with regard to any discovery disputes, and any dispute the parties cannot resolve amicably shall be submitted for resolution by the Court. Nothing in this ESI Protocol shall be deemed as a waiver of the right of any party to object to any Request for Production, Interrogatory or other discovery request.

2.    Productions of ESI in the reasonably usable form set out in this protocol, including Attachment A, need not include any reference to the requests to which a document or ESI may be responsive.

3.      The parties will use Bates numbers for ESI.  The Bates number should be consistent across the production, contain no special characters (other than dashes or underscores), and be numerically sequential within a given document.  Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they are attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.

4.      Unless otherwise discussed and in accordance with the Court's Order, dated March 11, 2025, pursuant to Fed. R. Evid. 502(d), ECF Dkt. No. 20, the production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations, shall be treated as an inadvertent disclosure and not a waiver of the privileged or protection from discovery in this case or in any other federal or state proceeding. If the receiving party receives information it knows or reasonably should know was inadvertently disclosed, it must immediately notify the producing party, regardless of whether the receiving party would dispute that the document is privileged or otherwise protected. If the producing party notifies the receiving party of an inadvertent disclosure, or confirms that material was inadvertently disclosed in response to a notification from the receiving party, then the receiving party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  If the receiving party disputes the claim, the receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable efforts to retrieve it. The producing party must preserve the information until the claim is resolved.

## II.     ELECTRONICALLY STORED INFORMATION

1.     **PRODUCTION IN REASONABLY USABLE FORM**:  The Parties shall

produce ESI in connection with this protocol in reasonably usable form.

a.     Except as stated in paragraph II.2-3 below or as agreed hereafter by the

parties, such reasonably usable form in connection with this protocol shall be the single-page TIFF-

image format with extracted or OCR text and associated metadata as set out in Attachment A,

which is incorporated in full in this protocol.  If the receiving party seeks production in native

format of specifically identified ESI produced originally in TIFF-image form, the producing party

shall respond reasonably and in good faith to any such request.

b.     Metadata is (i) information embedded in or associated with Native Files that

is not ordinarily viewable or printable from the application that generated, edited, or modified such

Native File which describes the characteristics, origins, usage, or validity of the electronic file, or

(ii) information generated automatically by the operation of a computer or other information

technology system when a Native File is created, modified, transmitted, deleted, or otherwise

manipulated by a user of such system.  No Party has an obligation to create or manually code fields

that are not automatically generated by the processing of the ESI, that do not exist as part of the

original metadata of the document, or that would be unduly burdensome or costly to obtain.  The

following non-exclusive list of fields should be preserved and produced for each document to the

extent that such information is reasonable available at the time of collection and processing:

Custodian (including any non-human data source), File Path, E-mail Subject, From, To, CC, BCC,

Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Modified, Time

Modified, Date Created, File Size, File Extension, Confidentiality Designation, and Redaction

Designation.

2.      **DOCUMENTS SUBJECT TO PRODUCTION IN NATIVE FORMAT**:

Electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), desktop databases (*e.g.*, Access), and audio/video multimedia files that have been identified as responsive shall be produced in native format as well as other documents that cannot be rendered as TIFF images.

3.      **DOCUMENTS THAT MAY BE PRODUCED AS PDF IMAGES**

a.      Hard copy documents may be scanned and processed as PDF images with OCR or in TIFF-image form.

b.      Text messages may be exported and processed as PDF images with OCR or in TIFF-image form.

4.      **SEARCH PARAMETERS**:

a.      The parties shall meet and confer via email or telephone, and in good faith, to discuss reasonable search parameters, including custodians, file types, search terms, date ranges, and other search parameters.  This ESI Protocol shall not affect either party's right to seek relief from the Court regarding any disagreements that cannot be resolved between the Parties.

b.      The producing party shall retain the sole right and responsibility to conduct the searches of its data files.  The fact that any electronic file has been identified as being "hit" by a search term shall not prevent any party from withholding such file from production on the grounds that the file is not responsive or is protected from disclosure by an applicable privilege.

5.      **DEDUPLICATION:** ESI shall be globally deduplicated across custodians.  ESI duplicates shall be removed from all ESI productions in a manner that does not break up document families – in other words, emails shall be treated as duplicates only if they are identical both in

their bodies and in all their attachments, and an email attachment shall not be treated as a duplicate merely because an identical copy of the document exists as a separate file.

6.     **THREADING:** The use of inclusive email threading is optional. The most recent responsive email containing a thread of emails will be produced, as well as all unique attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Other emails within the thread may also be produced, but are not required to be produced if a more inclusive thread is produced. For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates. In the event an email is withheld on privilege grounds, all members of the thread must be reviewed independently for privilege and logged as applicable. Horizontal de-duplication should not result in withholding BCC information.

## III.    **PERSONAL ACCOUNTS:**

1.     **DEFENDANT**: To the extent any of the agreed-upon relevant custodians sent or received any messages on their personal email accounts or cellular phones regarding any of the allegations or defenses in this matter at any time, Defendant shall conduct a thorough and diligent search of any and all personal email accounts within its possession, custody or control for responsive ESI, including a thorough and diligent search of any personal email subfolders (Inbox, Sent, Outbox, Deleted, Junk, Drafts and/or any other subfolders), as well as a thorough and diligent search of any text messages. This paragraph is not intended to limit or expand the obligations of relevant custodians to search for and produce documents.

2.     **PLAINTIFF**: Plaintiff shall conduct a thorough and diligent search for responsive ESI, including, without limitation, by conducting a thorough and diligent search of (i) any personal or other email accounts within Plaintiff's possession, custody or control, including email

subfolders (Inbox, Sent, Outbox, Junk, Drafts and/or any other subfolders); and (ii) any text messages, voicemails, or other communications.  This paragraph is not intended to limit or expand the obligation of Plaintiff to search for and produce documents.

IV.    **<u>PRIVILEGE LOG</u>**:

1.    For all responsive documents, the Parties will provide a privilege log contemporaneously with the relevant document production identifying the privilege the producing party is asserting and containing sufficient information to enable the receiving party to evaluate the claim of privilege.

2.    All Documents which a producing party contends are subject to attorney-client privilege should include: the date of the communication, the type of document or thing, the documents' title or file name, the date thereof, the names or names of the originator/author thereof, the name of the addressee(s)/recipient(s), the number of pages or other units, the present custodian and location of the document or thing, and a statement regarding the specific grounds on which the claim of privilege rests in order that the receiving party may have a factual basis to determine whether the asserted privilege exists.  For all individuals identified as custodians, originators/authors, or addressees/recipients, please state their role, and whether they are an attorney.

3.    The parties agree that a privilege log need not include: (a) communications between parties and counsel (including internal communications within a law firm or legal department of a corporation) on and after Plaintiff notified Defendant on January 9, 2024 of his intention to bring claims; or (b) work production created by or for trial counsel in this matter after the commencement of the action.

V.    **ASSISTIVE TECHNOLOGIES**

1.    All productions made on behalf of any party should not be entered through any generative artificial intelligence ("GenAI") tools, including but not limited to ChatGPT or any other tool that generates new content, unless otherwise agreed upon by the parties in writing in advance.  No GenAI tool that stores data outside of the secure control of any party or any party's counsel may be used unless otherwise agreed upon by the parties in writing in advance. No GenAI tool that allows for produced data to be publicly available is permissible. For sake of clarity, this provision does not preclude use of Relativity or comparable litigation support software which is in the control of any party or any party's counsel.

2.    The parties agree that a party may only use Technology Assisted Review ("TAR") to review documents for production if expressly agreed upon in writing by the parties.  The Parties further agree not to unreasonably withhold such consent to use TAR.  If a party uses any form of TAR in connection with its review of documents for production, the producing party should identify the form of TAR used and describe the protocols and methodology used in the TAR.

SO STIPULATED AND AGREED:

Dated: September 10, 2025

BANTLE & LEVY LLP                                MORRISON COHEN LLP
99 Park Avenue, Suite 1510                       909 Third Avenue, 27th Floor
New York, New York 10016                         New York, New York 10022

*H. David Krauss*                                  _/s/ Keith A. Markel_
Robert L. Levy, Esq.                             Keith A. Markel, Esq.
H. David Krauss, Esq.                            Alana R. Mildner Smolow, Esq.
                                                 Kayla N. West, Esq.

SO ORDERED:

STEWART D. AARON
United States Magistrate Judge

Dated: September 23, 2025

7

## ATTACHMENT A

A.1.   Image Files:  Files produced in *.tif image format will be single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape).  Each *.tif file will be assigned a unique name matching the production number of the corresponding page.  Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file.  Production ("Bates-Stamp") numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

*be consistent across the production;*

*contain no special characters (other than dashes or underscores); and*

*be numerically sequential within a given file.*

Bates numbers should be a combination of an alpha prefix along with a 5-7 digit number (e.g. ABC00001).  The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.  Confidentiality designations, if any, will be endorsed on the lower left corner or lower center of all images and shall not obscure any portion of the original file.

A.2.   File Text:  Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (i.e., not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'ed and file-level OCR text will be provided in lieu of extracted text.  ESI without extractable text may also be OCR'ed.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file.  The full path of the text file must be provided in the *.dat data load file.

A.3.   Word Processing Files:  Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with any tracked changes and comments showing (or produced separately in native format).

A.4.   Presentation Files:  To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format (i.e., the file is redacted in part such that it cannot be produced natively per Section II.2 above), such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5.     Spreadsheet or Worksheet Files: To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format (i.e., the file is redacted in part such that it cannot be produced natively per Section II.2 above), such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

A.6.     Parent-Child Relationships: Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.7.     Dynamic Fields: Files containing dynamic fields such as file names, dates, and times will be produced showing data based upon the "last modified date" of the file, rather than the values for such fields existing at the time the file is processed.

A.8.     Embedded Objects: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Outlook; and PDF. Subject to claims of privilege, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.9.     Compressed Files: Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.10.    Encrypted Files: The producing party will take reasonable steps, prior to production, to provide passwords and any other access requirements for encrypted files produced.

A.11.    Production Numbering: In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.12.    Data and Image Load Files:

Load Files Required: Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

Load File Formats:

i.       Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name.

For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

ii.  Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

*Fields to be Included in Data Load File*:  For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions.

| Field | Sample Data | Comment |
|---|---|---|
| PRODBEG<br>[Key Value] | ABC00001 | Beginning production number |
| PRODEND | ABC00008 | Ending production number |
| PRODBEGATT | ABC00009 | Beginning production number of parent in a family |
| PRODENDATT | ABC01005 | Ending production number of last page of the last attachment in a family |
| CUSTODIAN(S) | Smith, John | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\001\001\ABC00001.xls | Path and file name for native file on production media |
| FOLDER | \My Documents\Document1.doc | Original source folder for the record produced. |
| FILENAME | Document1.doc | Name of original electronic file as collected. |
| DOCEXT | DOC | File extension for email or e-doc |

| PAGES | 2 | Number of pages in the produced document or electronic file (not applicable to native file productions). |
|---|---|---|
| AUTHOR | John Smith | Author information as derived from the properties of the document. |
| DATELASTMOD | 10/09/2005 | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | "From" field extracted from email message |
| TO | Janice Birch | "To" field extracted from email message |
| CC | Frank Maple | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 24 hour | Sent time of email message, time zone set to EST |
| DATERCVD | 10/10/2005 | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 24 hour | Received time of email message, time zone set to EST |
| TEXTPATH | Text\001\001\ABC00001.txt | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Name of the Production Volume |

A.13.  Files Produced in Native Format:  Any electronic file produced in native file format shall be given a file name consisting of a unique Bates-Stamp number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."  For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively."  To the

extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.14.   <u>Production Media:</u> Unless otherwise agreed, documents and ESI will be produced via secure FTP site, or similar electronic format.  Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.).  Deliverable media should be labeled with the name of this action, the identity of the producing party, and the following information: Volume name, production range(s), and date of delivery.

A. 15.   <u>Messages</u>.  iMessages, Short Message Service files or instant messenger services such as but not limited to: Slack, Signal, Discord, Microsoft Teams, Telegram, Text messages (MMS, SMS, iMessage, Whatsapp), Google Chat, Instagram, should be produced no smaller than by day (24-hour period) ensuring that the entire conversation thread is maintained in a family group or by providing the Conversation Thread ID as applicable.